## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LEONARDO G.Z,** | |
| **Petitioner,** | |
| **v.** | **Case No. 25-CV-0600-SEH-MTS** |
| **KRISTI NOEM, Secretary, Department of Homeland Security, PAMELA BONDI, United States Attorney General, JOSHUA JOHNSON, Enforcement and Removal Operations, Immigration and Customs Enforcement, Dallas Field Office Director, and VIC REGALADO, Tulsa County Sheriff,** | |
| **Respondents.** | |

## OPINION AND ORDER

Immigration and Customs Enforcement ("ICE") arrested Petitioner Leonardo G.Z., a native of Mexico and resident of Oklahoma, in Oklahoma City on November 4, 2025, and the Department of Homeland Security ("DHS") has detained him since without a bond hearing. Petitioner seeks federal habeas relief through a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"), claiming his detention without a bond hearing violates federal law governing the pre-removal detention of noncitizens and his Fifth Amendment right to due process. [ECF No. 2].

Respondents DHS Secretary Kristi Noem, United States Attorney General Pamela Bondi, and Director of ICE's Dallas Field Office Joshua Johnson, (collectively, "Respondents")[1] urge the Court to deny the Petition, asserting

---

[1] Respondent Tulsa County Sheriff Vic Regalado requests dismissal from this action because Petitioner no longer is detained at the David L. Moss Criminal Justice Center ("DLMCJC," a.k.a., the Tulsa County Jail). [ECF Nos. 10-1, 10-2, 11, 11-1, 11-2]. Petitioner does not object to this request. [ECF No. 11 at 2; ECF No. 12]. The Court finds dismissal is appropriate. Sheriff Regalado was properly named as a respondent at the inception of this action because Petitioner filed the Petition while he was detained at the DLMCJC. [See ECF No. 3 at 2-3 (discussing immediate-custodian rule)]. But Petitioner's transfer to a different facility moots any dispute he had with Sheriff Regalado regarding the lawfulness of his detention. *See Jones v. Cunningham*, 371 U.S. 236, 241 & n.15 (1963) (citing several cases as holding "that the dispute between the petitioner and the named respondent in each case had become moot because that particular respondent no longer held the petitioner in his custody"). The Court therefore DISMISSES Sheriff Regalado from this action and directs the Clerk of Court to terminate Sheriff Regalado as party respondent. However, the Court finds it unnecessary to substitute the warden of Petitioner's current facility in place of Sheriff Regalado because Respondents Noem and Johnson also are Petitioner's immediate custodians. [ECF No. 3 at 3]. And both are subject to this Court's jurisdiction and have legal authority to effectuate any order this Court issues regarding Petitioner's custody. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Molina Ochoa v. Noem*, No. 1:25-CV-00881-JB-LF, 2025 WL 3125846, at *14 (D. N.M. Nov. 7, 2025) (unpublished) (applying *Padilla* in habeas action filed by noncitizen detainee and noting government's argument that even if noncitizen detainee were transferred to a different facility outside original district of confinement, one of several federal officials also named as respondents in the habeas action remained an immediate custodian subject to district court's jurisdiction).

Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A)[2] pending the outcome of his removal proceeding and has not been denied due process. [ECF No. 10].

On consideration of the parties' arguments and applicable law, the Court GRANTS in part and DISMISSES in part the Petition and directs Respondents to provide Petitioner a bond hearing, in accordance with 8 U.S.C. § 1226(a) and 8 C.F.R. 236.1(d)(1), on or before 5:00 p.m. on January 6, 2026.

## I. Background

Petitioner is a citizen of Mexico. [ECF No. 2 at 4].[3] He has lived in Oklahoma City, Oklahoma since 2000. [*Id.* at 10]. Petitioner is the father of

---

[2] As further discussed below, and subject to two exceptions not relevant here, this provision mandates detention pending conclusion of a removal proceeding, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Jennings v. Rodriguez*, 583 U.S. 281, 287-88, 297, 301 (2018) (discussing pre-removal detention under § 1225(b)(1) and (b)(2) and explaining that both provisions "mandate detention of applicants for admission until certain proceedings have concluded").

[3] For consistency, the Court's citations refer to the CM/ECF header pagination. The Court cites all unpublished decisions herein for their persuasive value. Fed. R. App. P. 32.1; 10th Cir. R. 32.1. In addition, unless directly quoting a statute or court decision, the Court uses the term "noncitizen" rather than the term "alien." *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (adopting use of "noncitizen" in place of "alien"); 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States").

six children (ages 20, 18, 14, 9, 7, and 1), all of whom are United States citizens.  [*Id*.].  Petitioner is the family's breadwinner, pays taxes, and is a community member with deep ties to Oklahoma.  [*Id*.].  For the last ten years, he has maintained steady employment with a roofing company.  [*Id*.].

In July 2025, DHS issued a policy statement entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission."  [ECF No. 2 at 6-7].[4]  The statement instructs ICE to treat any "applicant for admission,"[5] as subject to mandatory detention under § 1225(b)(2)(A) and as ineligible for release from ICE custody unless through a grant of discretionary parole

---

[4] Some courts have described the DHS policy statement as non-public, but the statement reportedly was leaked to the American Immigration Lawyers Association ("AILA") and screenshots are available to the public at https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission, last visited Dec. 19, 2025.  [ECF No. 2 at 7 n.1]; *see, e.g., Maldonado Vazquez v. Feeley*, Case No. 2:25-cv-01542-RFB-EJY, ___ F. Supp. 3d___, 2025 WL 2676082 at *5 & n.2 (D. Nev. Sept. 17, 2025) (discussing DHS statement).  Respondents do not mention the statement, but they agree "that recent enforcement of § 1225(b)(2)(A) is a change in policy by the new administration."  [ECF No. 10 at 2].

[5] As further discussed below, "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of [Title 8, Chapter 12 of the United States Code] an applicant for admission."  8 U.S.C. § 1225(a)(1).

under 8 U.S.C. § 1182(d)(5)(A).[6]  [ECF No. 2 at 2, 6-7].  Two months later, the

Board of Immigration Appeals ("BIA") issued a published decision in *Matter*

*of Yajure Hurtado*, 29 I&N Dec. 216, 220, 225 (BIA Sept. 5, 2025), holding

that immigration judges lack authority to hear bond requests or grant bond

to noncitizens who are "applicants for admission, even those . . . who have

entered without admission or inspection and have been residing in the

United States for years without lawful status," because the plain language of

§ 1225(b)(2)(A) mandates detention of these noncitizens pending the

conclusion of a removal proceeding.

On November 4, 2025, ICE arrested Petitioner in Oklahoma City pursuant

to warrant issued that same day.  [ECF No. 2 at 4, 10; ECF No. 10 at 5; ECF

No. 10-1 at 4].  Upon his arrest, ICE initiated removal proceedings under 8

U.S.C. § 1229a, by serving Petitioner with a Notice to Appear ("NTA").[7]  [ECF

No. 10-1 at 1-3].  The NTA charges Petitioner with removability, alleging he

is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) because he entered the

country at an unknown place on an unknown date and that he was not then

---

[6] The Secretary of DHS "may [with two exceptions not relevant here] in [her] discretion parole into the United States temporarily under such conditions as [s]he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

[7] *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (discussing initiation of removal process through issuance of notice to appear).

admitted or paroled after inspection by an immigration officer.[8]  [*Id.*].  Based on the allegations in the NTA and consistent with DHS's new policy, ICE determined Petitioner was an applicant for admission subject to mandatory detention under § 1225(b)(2)(A) and that he was not eligible for release on bond.  [ECF No. 2 at 2; ECF No. 10 at 2].  Petitioner was detained at the DLMCJC in Tulsa, Oklahoma, between November 4, 2025, and November 10, 2025, and then was transferred to the Cimarron Correctional Facility in Cushing, Oklahoma.  [ECF Nos. 10-1, 10-2, 11, 11-1, 11-2].

Appearing through counsel, Petitioner filed the Petition on November 7, 2025, while he was detained at the DLMCJC.  [ECF No. 2].  The Court established a briefing schedule and Respondents responded to the Petition on November 25, 2025.  [ECF No. 10].  Petitioner replied on December 2, 2025. [ECF No. 12].  As directed by the Court, Respondents and Petitioner filed a joint status report on December 15, 2025, regarding Petitioner's ongoing removal proceeding.  [ECF Nos. 13, 14].  According to that report, Petitioner

---

[8] Subject to an exception not relevant here, a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the [DHS Secretary], is inadmissible" and removable.  8 U.S.C. § 1182(a)(6)(A)(i).  This statute refers to the Attorney General, not the DHS Secretary, but both are empowered to enforce immigration laws.  *Guzman Chavez*, 594 U.S. at 527 n.1 (2021); *see also* 8 U.S.C. § 1227(a)(1) (identifying classes of deportable noncitizens as including noncitizens inadmissible at the time of entry and those "present in the United States in violation of [Chapter 12] or any other law of the United States).

is scheduled for a master hearing before an immigration judge on January 6, 2026.  [ECF No. 14].[9]

## II. Discussion

Petitioner raises two claims.  First, he claims DHS is violating the Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), by detaining him under § 1225(b)(2)(A), because he instead is subject to discretionary detention under 8 U.S.C. § 1226(a) and thus eligible for a bond redetermination hearing before an immigration judge.  [ECF No. 2 at 5-11; ECF No. 12 at 1-6].

Second, citing *Demore v. Kim*, 538 U.S. 510 (2003), and *Zadvydas v. Davis*, 533 U.S. 678 (2001), he claims DHS is violating his Fifth Amendment right to due process by detaining him "indefinitely" without a bond redetermination hearing.  [ECF No. 2 at 11; ECF No. 12 at 6-7].  Petitioner asks this Court to declare that his detention is unlawful, to issue a writ of habeas corpus directing Respondents to either release him or promptly provide him with a bond redetermination hearing under § 1226(a), and to award attorney's fees

---

[9] The facts are undisputed, and no party has requested an evidentiary hearing.  The Court therefore adjudicates the Petition without one.  28 U.S.C. § 2242; Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*.

and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. [ECF No. 2 at 2, 12].

Before proceeding to the merits of Petitioner's claims, the Court briefly addresses two threshold issues: jurisdiction and venue.

## A. Jurisdiction

Petitioner contends this Court has jurisdiction to adjudicate the Petition under 28 U.S.C. § 2241(c) and 28 U.S.C. § 1331. [ECF No. 2 at 3; ECF No. 12 at 7].[10] Respondents disagree, asserting that "Petitioner's request to construe his detention as pursuant to § 1226(a) rather than § 1225(b)(2)(A) is a challenge to how DHS commenced proceedings (not his mere detention), which is barred by the jurisdiction stripping provision of the INA." [ECF No. 10 at 4]. Respondents do not identify any specific "jurisdiction stripping provision" or otherwise develop any argument challenging jurisdiction. Nonetheless, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). And the Court

---

[10] Petitioner also identifies Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause) as a source of this Court's jurisdiction. [ECF No. 2 at 3]. Because this Court has jurisdiction to adjudicate the Petition under § 2241(c)(3), the Court declines to address Petitioner's apparent argument that the Suspension Clause either generally confers jurisdiction or otherwise requires adjudication of the Petition under the specific circumstances of this case.

determines that subject-matter jurisdiction exists and no portion of the INA precludes exercise of that jurisdiction.

Federal courts have jurisdiction to determine whether a person, including a noncitizen detained by immigration officials, is being held "in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3); *see Boumediene v. Bush*, 553 U.S. 723, 732, 800 (2008) (Souter, J., concurring) (describing, in a habeas action brought by noncitizens designated as enemy combatants and detained at the United States Naval Station at Guantanamo Bay, Cuba, as "a basic fact of Anglo–American constitutional history:  that the power, first of the Crown and now of the Executive Branch of the United States, is necessarily limited by habeas corpus jurisdiction to enquire into the legality of executive detention"); *Munaf v. Green*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention.").

But Congress has placed certain limits on the exercise of federal habeas jurisdiction in the immigration context. *See*, *e.g.*, 8 U.S.C. §§ 1226(e), 1252.[11] Respondents appear to suggest the limit imposed by § 1252(g) applies. It provides that "except as provided in § 1252" and "notwithstanding any other provision of law . . . including" § 2241 "or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). If this is "the jurisdiction stripping provision" Respondents reference, it does not bar judicial review because neither of Petitioner's claims challenge DHS's decision to commence his removal proceeding, adjudicate his case, or execute a not-yet-issued removal order. *See Dep't of Homeland Sec.*, 591 U.S. at 20 (concluding that § 1252(g) "limits

---

[11] For example, a federal court may not exercise federal habeas jurisdiction to review certain decisions denying discretionary relief, *see* 8 U.S.C. § 1252(a)(2)(B), or to review any final order of removal against a criminal noncitizen, *id.* § 1252(a)(2)(C). And § 1252(b)(9) "bars review of claims arising from 'action[s]' or '"proceeding[s] brought to remove an alien."' *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). In addition, while judicial review of "any determination made under" 8 U.S.C. § 1225(b)(1) is available in habeas proceedings, that review is limited to three specific determinations. 8 U.S.C. § 1252(e)(2). And § 1226(e) bars judicial review of DHS's "discretionary judgment regarding the application of [§ 1226]" and further provides that "[n]o court may set aside any action or decision by [DHS] under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders'" but does not "cover 'all claims arising from deportation proceedings'"); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (explaining that § 1252(g) "applies only to three **discrete** actions that the Attorney General may take:  her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" (emphasis in original)).  Petitioner's claims instead challenge the statutory basis DHS relies on to detain him and assert a violation of his Fifth Amendment right to due process.  As to these claims, § 1252(g) does not apply.[12]

## B. Venue

Petitioner contends venue is appropriate in this judicial district, and Respondents do not say otherwise.  [ECF No. 2 at 3; ECF No. 10].  The Court

---

[12] Respondents do not identify any other jurisdictional bar, and the Court independently has not found one.  *See Demore*, 538 U.S. at 517 (holding, in a case involving a noncitizen's challenge to mandatory pre-removal detention, that § 1226(e) "contains no explicit provision barring habeas review, and . . . that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail"); *Ozturk v. Hyde*, 136 F.4th 382, 394-401 (2d Cir. 2025) (thoroughly discussing § 1252's jurisdiction-stripping provisions and finding that none barred habeas review of the petitioner's "challenges [to] her unlawful detention, pending [removal] proceedings" and relying on *Demore* and *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020), to conclude that § 1226(e) does not bar habeas review of constitutional claims or questions of law).

nonetheless briefly addresses whether Petitioner's transfer to the Cimarron Correctional Center may have affected venue and concludes it did not.

Under 28 U.S.C. § 2241(a), federal district courts may grant habeas relief only "within their respective jurisdictions." *See Padilla*, 542 U.S. at 447, 449-50 (reaffirming "the longstanding rule" that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should . . . file the petition in the district of confinement"); *id.* at 451-52 (Kennedy, J., concurring) (describing "[t]he phrase 'respective jurisdictions,'" as used in § 2241(a), as "a territorial restriction on the proper forum for habeas petitions" rather than a "limitation goes to the power of the court to hear the case"). The district-of-confinement rule applies to noncitizens detained by immigration authorities. *See, e.g.*, *Baquera v. Longshore*, 948 F. Supp. 2d 1258, 1259 (D. Colo. 2013) (applying district-of-confinement rule in § 2241 habeas action filed by noncitizen detained in ICE custody).

Petitioner's transfer to a facility in Cushing, which is in Payne County, Oklahoma, means that he now is detained in a different judicial district.[13] 28 U.S.C. § 116(c). But compliance with the district-of-confinement rule is

---

[13] Because the transfer moots Petitioner's request for an order directing Respondents not to transfer him out of this judicial district while the Petition is pending, the Court DISMISSES the Petition in part as to that request. [ECF No. 2 at 12].

determined at the time of filing and venue is appropriate here because Petitioner filed the Petition while he was detained in this judicial district. *See* 28 U.S.C. § 116(b); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445-47 (3d Cir. 2021) (holding that the District Court for the District of New Jersey retained jurisdiction when habeas petitioner was transferred outside of the district during the pendency of the case); *Pinson v. Berkebile*, 604 F. App'x 649, 652-53 (10th Cir. 2015) (citing *Padilla* and holding that "the District of Colorado acquired jurisdiction when [the petitioner] filed his habeas petition," and that his "transfer does not defeat that initial jurisdiction").

### C. Statutory claim

Petitioner claims his mandatory detention under § 1225(b)(2)(A) violates the INA and that he instead is subject to discretionary detention under § 1226(a) and thus eligible to seek release on bond. [ECF No. 2 at 5-10; ECF No. 12 at 1-6]. Respondents disagree. [ECF No. 10].

Before addressing the parties' specific arguments, the Court provides an overview of the relevant statutes.

### 1. Relevant statutes authorizing pre-removal detention

Sections 1225 and 1226 both authorize pre-removal detention of noncitizens. Both statutes are found in 8 U.S.C., Chapter 12, Subchapter II, Part IV, of the INA, as amended by IIRIRA, which is titled "Inspection,

Apprehension, Examination, Exclusion, and Removal." *Guzman Chavez*, 594

U.S. at 543.  Highly summarized,

> The sections within that part proceed largely in the sequential steps of the removal process.  Sections 1221 to 1224 address the arrival of aliens.  Section 1225 provides instructions for inspecting aliens, expediting the removal of some, and referring others for a removal hearing.  Section 1226 authorizes the arrest and detention of aliens pending a decision on whether they are to be removed.  Section 1227 explains which aliens are deportable. Section 1228 authorizes the expedited removal of some of those deportable aliens.  Sections 1229, 1229a, and 1229b set out the process for initiating and conducting removal proceedings, and they specify the types of relief that an alien can request during those proceedings, such as cancellation of removal.  Section 1229c addresses voluntary departure.  Section 1230 explains what to do if an alien is admitted.  And § 1231 explains what to do if the alien is ordered removed.

*Id.* at 543-44.

### a. Detention under § 1225

Section § 1225, titled "Inspection by immigration officers; expedited

removal of inadmissible arriving aliens; referral for hearing," guides the

"process of decision [that] generally begins at the Nation's borders and ports

of entry, where the Government must determine whether an alien seeking to

enter the country is admissible." *Jennings*, 583 U.S. at 287.  Under §

1225(a)(1), "[a]n alien present in the United States who has not been

admitted or who arrives in the United States (whether or not at a designated

port of arrival and including an alien who is brought to the United States

after having been interdicted in international or United States waters)" is

"deemed" an "applicant for admission."[14]  In *Jennings*, the Supreme Court discussed § 1225 and stated,

> [A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2).  Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. *See* § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)).  Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. *See* § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader.  It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). *See* §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens.  Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i).  But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii).  If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii).  Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process.  Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country.  § 1225(b)(2)(A).

---

[14] The INA does not define the phrase "arriving alien."  It is, however, defined by federal regulation as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.  8 C.F.R. § 1.2.

Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); *see also* 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

*Jennings*, 583 U.S. at 287-88.

### b. Detention under § 1226

Section 1226, titled, "Apprehension and detention of aliens," "generally governs the process of arresting and detaining" noncitizens subject to removal and "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 288, 303. This section authorizes the detention of two categories of noncitizens. First, § 1226(a) "sets out the default rule" by providing that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Jennings*, 583 U.S. at 288. Subsection (a) permits an immigration officer executing an arrest warrant to make an initial decision whether to detain or release on bond a noncitizen while a removal proceeding is pending and permits a noncitizen who is detained to seek review of an initial bond determination through a bond redetermination hearing at which the noncitizen bears the burden to

show that release is warranted.  8 U.S.C. § 1226(a); 8 C.F.R. §§236.1(c)(8) and (d)(1)); *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 218 (discussing discretionary detention under § 1226(a) and regulations governing release); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1111-13 (1999) (interpreting 8 C.F.R. § 236.1(c)(8) as placing the burden of proof on the noncitizen to show "to the satisfaction of" the immigration judge and the BIA that the noncitizen's release would not pose a danger to the community and that the noncitizen is likely to appear for any future immigration proceeding).  Either party may appeal the immigration judge's bond determination to the BIA.  *See* 8 C.F.R. §§ 1003.19, 1003.38, 1236.1(d).

Second, § 1226(c), which also "applies to aliens present in the United States," requires the Attorney General to "'take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 303 (citing § 1226(c)(1)).  The first four enumerated categories include any noncitizen who is inadmissible or deportable for having committed certain criminal offenses or for having engaged in terrorist activities.  8 U.S.C. § 1226(c)(1)(A)-(D).  A fifth category, added by Congress in January 2025, includes any noncitizen who is "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of [Title 8]; and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential

elements of" specific criminal offenses.  8 U.S.C. § 1226(c)(1)(E).[15]  The

Attorney General must take into immigration custody noncitizens described

in these five categories "when [they are] released" from criminal custody.  8

U.S.C. § 1226(c)(1); *Nielsen v. Preap*, 586 U.S. 392, 398 (2019).  The Attorney

General also must detain noncitizens taken into custody under § 1226(c) and

"'may release" them "only if the Attorney General decides" that witness-

protection purposes necessitate release "and the alien satisfies the Attorney

General that the alien will not pose a danger to the safety of other persons or

of property and is likely to appear for any scheduled proceeding."  8 U.S.C. §

1226(c)(4); *Jennings*, 583 U.S. at 303.

### 2. Analysis

The question presented by Petitioner's statutory claim is whether §

1225(b)(2)(A) mandates detention only of "applicants for admission" who are

presently "seeking admission," i.e., those presently seeking lawful entry into

the United States (as Petitioner contends), or whether it mandates detention

of all applicants for admission, including noncitizens who, like Petitioner, are

"present in the United States without being admitted" and have lived in the

United States for years but were not actively seeking lawful entry when

---

[15] Subsection (c)(1)(E) was among the provisions added to 8 U.S.C. § 1226(c) through the Laken Riley Act, Pub. L. No. 119-1, § 2, 3(b), 139 Stat. 3, 3, 4 (2025).

apprehended by immigration authorities (as Respondents contend). [ECF No. 2 at 2, 5-10; ECF No. 10 at 5-14; ECF No. 12 at 1-6].

This is not a novel question. Federal district courts across the country are confronting this same question almost daily, and most have rejected the position taken by Respondents in this case. [*See* ECF No. 2 at 7-9 (gathering cases rejecting DHS's interpretation of § 1225(b)(2)(A)); ECF No. 10 at 3 n.1 (citing three cases adopting DHS's interpretation of § 1225(b)(2)(A))]; *see also Coronado v. Secretary, DHS*, Case No. 1:25-CV-831, 2025 WL 3628229, at *7 (S.D. Ohio Dec. 15, 2025) (estimating that "district courts have issued more than 700 decisions addressing the topic in one way or another," and that "most of those courts" have rejected DHS's interpretation of § 1225(b)(2)(A). That this Court does not write on a blank slate is an understatement. And, while the Court has carefully considered the reasoned decisions of other federal district courts and relevant BIA decisions, none of these decisions is binding on this Court. So, the Court must answer the question for itself. For the following reasons, the Court finds that the plain text of § 1225(b)(2)(A), the overall structure of § 1225, and clear guidance from *Jennings* regarding the distinction between §§ 1225 and 1226, all support Petitioner's claim that he is unlawfully detained under § 1225(b)(2)(A).

### a. Legal standards

When litigants disagree about the meaning of a statute, a court begins by considering the plain text. *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018). The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Ceco Concrete Constr., LLC v. Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1258 (10th Cir. 2016) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "If the language is plain and unambiguous, '[the court's] inquiry must cease and the plain meaning of the statute controls.'" *Id.* (quoting *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1225 (10th Cir. 2014)). But "the plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341; *see also Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) ("The words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). And, if the text is not plain, the court must "use every tool at [its] disposal to determine the best reading of the statute and resolve the ambiguity." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

In applying those tools, "[i]t is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883). "'[E]very clause and word of a statute' should have meaning." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair*, 107 U.S. at 152). This includes titles and section headings. *See Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing statutory titles and section headings as "tools available for the resolution of a doubt," but noting "the wise rule" that titles and section headings "cannot undo or limit that which the text makes plain"). "[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment).

### b. Application of legal standards

Section 1225(b)(2)(A) mandates detention until the conclusion of a removal proceeding, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see also Jennings*, 583 U.S. at 299, 302 (explaining that, under

21

§ 1225(b)(2)(A) "detention must continue . . . until removal proceedings have concluded").

Respondents assert that "the relevant question here is who constitutes an 'applicant for admission,' potentially subject to § 1225(b)(2)(A) and its more restrictive mandatory detention provision." [ECF No. 10 at 5.] But that is not a question at all, much less a relevant one. The INA tells us who is considered an "applicant for admission": "[a]n alien present in the United States who has not been admitted *or* who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1) (emphasis added). It also defines the terms "admission" and "admitted" as meaning, "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Moreover, Petitioner does not dispute that he is an applicant for admission, rather, he identifies himself as one by stating that he is "a noncitizen present in the United States without admission." [ECF No. 12 at 5].

Instead, Petitioner argues that by using the phrase "seeking admission" immediately after the introductory clause "in the case of an applicant for admission," Congress made plain that § 1225(b)(2)(A) applies only to certain applicants for admission, namely, those who presently and actively are

22

seeking lawful entry into the United States after inspection and authorization by an immigration officer.  [ECF No. 2 at 2, 9-10; ECF No. 12 at 1-3].  On this point, Respondents contend "there is no textual basis for arguing that § 1225(b)(2)(A) applies only to arriving aliens [because] no provision within § 1225(b)(2) refers to 'arriving aliens,' or limits that clause to arriving aliens, and Congress instead intended for it to apply generally 'in the case of an alien who is an applicant for admission."  [*Id.* at 8-10]. Respondents further contend that "interpreting the present participle 'seeking' as denoting an ongoing process" would be "consistent with its ordinary usage" and that noncitizens, like Petitioner, who are "present without admission, but also seeking to remain in the United States" are both applicants for admission and seeking admission.  [*Id.* at 12].

For three reasons, Petitioner has the better argument.  First, Respondents' reading of § 1225(b)(2)(A) as applying to all applicants for admission without regard to whether they are seeking lawful entry into the United States renders meaningless Congress's use of the phrase "seeking admission."  *See United States, ex rel. Polansky*, 599 U.S. at 432 ("'[E]very clause and word of a statute' should have meaning.").  As most courts have reasoned, the phrase "seeking admission" has meaning only if it is understood as identifying a subset of applicants for admission who are subject to mandatory detention pending removal, namely those applicants for

admission who currently are seeking lawful *entry into* the United States as part of the inspection process that occurs at the Nation's borders and ports of entry and who are not clearly and beyond a doubt entitled to lawful entry. *See, e.g.*, *Nunez Ramos v. Noem*, Civil Action No. 3:25-cv-00387, 2025 WL 3687335, at *3 (W.D. Pa. Dec. 19, 2025) (unpublished) ("By using the term 'seeking admission,' Section 1225(b)(2)(A) limits its statutory application to aliens actively attempting to enter the United States lawfully at its port of entry and does not extend to those already present in the United States who previously entered without inspection."); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), ___ F. Supp. 3d ____, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (concluding that the "language of [§ 1225](b)(2)(A) makes clear that it applies only if three criteria are met. The noncitizen must be (i) an "applicant for admission," (ii) "seeking admission," and (iii) "not clearly and beyond a doubt entitled to be admitted"). Applying § 1225(b)(2)(A) to all applicants for admission without regard to whether they are seeking admission ignores the plain text of § 1225(b)(2)(A).

Second, Respondents' reading of § 1225(b)(2)(A) ignores the overall structure of 1225. *See Roberts*, 566 U.S. at 101 ("The words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Critically, the titles within § 1225 show that this statute generally applies to noncitizens arriving in the United States at borders and ports of

24

entry, not to noncitizens already present in the United States who have lived here for years without being admitted.  *See Yates*, 574 U.S. at 552 (Alito, J., concurring in judgment) ("[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest.").  As previously stated, § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The main subsections are (a) "Inspection"; (b) "Inspection of applicants for admission"; (c) "Removal of aliens inadmissible on security and related grounds"; and "(d) "Authority relating to inspections."  Drilling down further, § 1225(b)(1) is titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled,"[16] and § 1225(b)(2) is titled, "Inspection of other aliens."  Considering these titles, as well as the substance of the provisions found within the overall structure of § 1225, all provisions found therein relate to inspection and removal of noncitizens who are

---

[16] This title's reference to "certain other aliens not admitted or paroled" relates to noncitizens who are subject to expedited removal procedures because they are present in the United States, have not been admitted or paroled, are inadmissible for reasons described in 8 U.S.C. § 1182(a)(6)(C) and (a)(7), and have not shown continuous physical presence in the United States for the two years preceding the date an examining officer made the inadmissibility determination.  *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii).  While this provision shows that § 1225 does not apply exclusively to arriving aliens, it also shows that Congress knows how to include language in § 1225 when it intends for a specific provision to apply to certain noncitizens who are neither arriving nor seeking admission into the United States.

arriving (or have been present without admission for a minimal period) in the United States, presenting themselves for inspection at a port-of-entry, and applying for lawful entry to the United States.

Third, aside from being contrary to the plain text of § 1225(b)(2)(A) and the overall structure of § 1225, Respondent's expansive reading of § 1225(b)(2)(A) ignores clear guidance from *Jennings* that explains the interplay between §§ 1225 and 1226. As previously discussed, the *Jennings* Court aptly explained that § 1225 guides the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether *an alien seeking to enter the country* is admissible." *Jennings*, 583 U.S. at 287 (emphasis added). In contrast, § 1226 "applies to aliens *already present in the United States.*" *Id.* at 288, 303 (emphasis added). Likewise, Respondents ignore the reality that ICE applied § 1226(a), in accordance with *Jennings*'s guidance, when it arrested Petitioner on a warrant in Oklahoma City.

In sum, having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens, including § 1226, the Court concludes that Petitioner is not subject to

mandatory detention under § 1225(b)(2)(A).[17]    Instead, Petitioner may be detained pending his removal hearing only under § 1226(a) and therefore must be provided a bond redetermination hearing.

### III. Conclusion

Based on the foregoing discussion, the Court concludes that the Petition shall be GRANTED in part as to Petitioner's claim that he is unlawfully detained under § 1225(b)(2)(A) and DISMISSED in part as to (1) his request for an order barring his transfer to another judicial district, (2) his Fifth Amendment due process claim and (3) his request for attorney's fees and costs under the EAJA.

As a remedy for the statutory violation, the Court directs Respondents to provide Petitioner with a bond redetermination hearing, in accordance with 8

---

[17] In reaching this conclusion, the Court joins most courts in rejecting DHS's expansive reading of § 1225(b)(2)(A).  *See Nunez Ramos*, 2025 WL 3687335, at * 4 (noting that "the overwhelming majority of district courts in this country to have addressed the distinction between Section 1225(b) and Section 1226(a) have found that Section 1226(a), rather than the mandatory detention provision of Section 1225(b), applies to a noncitizen similarly situated to Nunez Ramos who is not seeking admission at a port of entry, but rather present in the United States."); *Barco Mercado*, 2025 WL 3295903, at * 4 n.22 (S.D. N.Y. Nov. 26, 2025) (collecting, in Appendix A, cases rejecting DHS's view that that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed" (emphasis in original)); *Contreras-Cervantes v. Raycraft*, Case No. 2:25-cv-13073, 2025 WL 2952796, *8 n.4 (E.D. Mich. Oct. 17, 2025) (unpublished) (collecting cases).

U.S.C. § 1226(a) and 8 C.F.R. § 236.1(d), on or before 5:00 p.m. on January 6, 2026. On or before January 14, 2026, Respondents shall file written notice with the Court confirming compliance with this Order.

The dismissal of Petitioner's Fifth Amendment claim and his request for attorney's fees and costs under the EAJA is without prejudice. If Petitioner is detained pending his removal proceeding, he may seek federal habeas relief in the future, if necessary, to challenge the length of his pre-removal detention if it becomes unconstitutionally prolonged. In addition, Petitioner may move for attorney's fees and costs under the EAJA in accordance with the deadlines and procedures of that statute and federal and local rules of civil procedure.

**IT IS THEREFORE ORDERED** that Sheriff Regalado is DISMISSED from this action, and the Clerk of Court shall terminate him as a party Respondent.

**IT IS FURTHER ORDERED** that the Petition [EFC No. 2] is GRANTED in part, as to Petitioner's claim that he is unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), and DISMISSED in part as to (1) his request for an order barring his transfer to another judicial district, (2) his Fifth Amendment due process claim, and (3) his request for attorney's fees and costs under the EAJA.

**IT IS FURTHER ORDERED** that Respondents SHALL PROVIDE

Petitioner with a bond redetermination hearing, in accordance with 8 U.S.C.

§ 1226(a) and 8 C.F.R. § 236.1(d), on or before 5:00 p.m. on January 6, 2026.

On or before January 14, 2026, Respondents SHALL FILE written notice

with the Court confirming compliance with this Order.

 **IT IS SO ORDERED** this 29th day of December, 2025.

_____

Sara E. Hill
UNITED STATES DISTRICT JUDGE